UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAWN R. DISSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-02319-SEB-MJD |
| | ) | |
| CYBORSKI DHO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shawn R. Disser is an Indiana Department of Correction ("IDOC") inmate, who was housed at New Castle Correctional Facility ("New Castle"). In this action, Mr. Disser proceeds on allegations that Defendants violated his Eighth Amendment rights by using excessive force upon him on April 17, 2023, in the chow hall at New Castle. *See* dkts. 1, 12.

Defendants have moved for summary judgment. For the reasons explained below, Defendants' unopposed motion for summary judgment, dkt. [38], is **granted**.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

1

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

After the Court granted him an extension, Mr. Disser failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

## A. Parties and Background

Plaintiff Shawn Disser is an IDOC inmate who was incarcerated at New Castle on April 17, 2023, the date his allegations occurred. Dkt. 1 (Complaint). Mr. Disser's sworn complaint states that on April 17, he was told to leave the chow hall and an altercation occurred. *Id*. at 2-4. After Mr. Disser struck Officer Cyborski and Officer Plyer, he was placed in mechanical restraints. *Id*. Mr. Disser then alleges that he was assaulted after he was mechanically restrained. *Id*.

Mr. Disser is proceeding only on his excessive force claims that arise from what happened after he was placed in mechanical restraints. *See* dkt. 12 (Screening Order) at 2-4.

Defendant David Cyborski is currently the CAB Chairman, employed by the GEO Group, Inc. ("GEO") at New Castle. Dkt. 39-1 (Cyborski Affidavit) at 1. On April 17, he was employed as a Correctional Sergeant working in the chow hall. *Id*.

Defendant Jackie Shaw works for GEO at New Castle as a Correctional Sergeant. Dkt. 39-2 (Shaw Affidavit) at 1. On April 17, she was working in the chow hall. *Id*

Defendant Robert Plyler works for GEO at New Castle as a K-9 Officer. Dkt. 39-3 (Plyer Affidavit) at 1. On April 17, he was working directly outside the chow hall, moving offenders who were not eating or supposed to be there out of the chow hall. *Id*.

## B. Use of Force Incident

### a. Plaintiff's Allegations

On April 17, 2023, Mr. Disser went through the New Castle diet lunch line and received his tray. Dkt. 1 at 2. Mr. Disser alleges that Sgt. Cybroski then approached him and told him to leave the chow hall because he had already eaten. *Id*. Mr. Disser then told Sgt. Cybroski he had not eaten, and Sgt. Cybroski took his tray. *Id*.

Mr. Disser alleges he then stood up to leave, and Officer Plyer reached out to grab him. *Id*. He then "blacked out" and struck Sgt. Cybroski in the face, rendering him unconscious, and "hip-tossed" Officer Plyer. *Id*. at 2-4. Mr. Disser was put into mechanical restraints, and alleges he was then beaten and assaulted after he was mechanically restrained. *Id*. at 2-4. Specifically, he states he was struck in the face, neck, upper back, lower back, and legs. *Id*. at 4. Mr. Disser then alleges he was taken to medical, where no photos were taken, and he was refused a meal. *Id*.

### b. Defendants' Submitted Evidence

In the chow hall, Sgt. Cyborski noticed Mr. Disser jump the rail in front of the diet window. Dkt. 39-1 at 1. Because that was not allowed, Sgt. Cybroski stopped Mr. Disser at the front area of the diet window and motioned for him to go around to the other side of the rail. *Id*. Mr. Disser then slipped between the rail and the wall to the line side of the railing. *Id*. at 2. Sgt. Cybroski saw Mr. Disser walk past him with his tray, and Sgt. Cybroski attempted to speak with him. *Id*.

This incident is thereafter captured on video[1]. *See* Exhibit A (Dining Hall 1 Exit video) and Exhibit B (Dining Hall 1 Main video).

Sgt. Cybroski requested Mr. Disser's identification and told him that he was going to receive a conduct report for jumping the railing. Dkt. 39-1 at 2. Mr. Disser then threatened Sgt. Cybroski, stating he was going to beat him up if he did not leave him alone. *Id*. Sgt. Cybroski responded that since he was now threatening, he was going to go to segregation pending conduct violations. *Id*. Sgt. Cybroski then called for Officer Plyler and his Captain due to the threats he was receiving from Mr. Disser. Dkt. 39-1 at 2; dkt. 39-3 at 1.

---

[1] Defendants filed a notice of manual filing, which includes the two designated videos, labeled as Exhibit A: Dining Hall 1 Exit, and Exhibit B: Dining Hall 1 Main. Dkts. 39, 41. The Court has reviewed the video footage designated and refers to the videos as identified by Defendants, by the timestamps on the video. The videos have no audio.

Officer Plyler arrived after noticing the arguing, and Mr. Disser began arguing and turned to leave. Dkt. 39-1 at 2; dkt. 39-3 at 1-2. Officer Plyler heard Mr. Disser threaten Sgt. Cybroski. dkt. 39-3 at 1. Officer Cybroski saw Mr. Disser facing Officer Plyler and reached to grab his left arm with his right hand to prevent him from walking away. Dkt. 39-1 at 2. Mr. Disser pulled away, and Officer Cybroski was able to hold on to Mr. Disser's jacket. Dkt. 39-1 at 2. Mr. Disser then turned towards Officer Cybroski and started punching him in the face. Dkt. 39-1 at 3; dkt. 39-3 at 2; Ex. A at 12:23:00-12:23:41. One punch in the face broke Officer Cybroski's glasses, and they fell off of his face. Dkt. 39-1 at 3. Sgt. Cybroski remembers getting hit in the face, his head hitting something hard and seeing stars. Dkt. 39-1 at 3.

Sgt. Shaw observed Mr. Disser fighting and striking Sgt. Cybroski and Officer Plyler. Dkt. 39-2 at 2. She then radioed an emergency signal so that other officers would arrive and assist and went to assist with restraining Mr. Disser. Dkt. 39-2 at 2. Sgt. Shaw observed Mr. Disser in a rage and constantly resisting and pushing all three correctional staff off of him. Dkt. 39-2 at 2.

The altercation continued to the ground, and Mr. Disser continued to fight Sgt. Cybroski, Officer Plyler, and Officer Shaw, and then the other officers who arrived to assist. Dkt. 39-1 at 3; dkt. 39-3 at 2; dkt. 39-2 at 2; Ex. A at 12:23:41-12:27:47. Sgt. Cybroski helped several officers restrain Mr. Disser as he was resisting and kicking. Dkt. 39-1 at 3. Officer Plyler attested that Mr. Disser was resisting so much that it took approximately a dozen custody staff to fully restrain him, as Mr. Disser was continually kicking and fighting. Dkt. 39-3 at 2. At one point, Mr. Disser was on top of Sgt. Cybroski punching him, so Officer Plyler tried to get his hands to stop him, but Mr. Disser turned in a way that made him lose his footing. Dkt. 39-3 at 2. Officer Plyler then fell back and hit his head on the edge of a metal table. Dkt. 39-3 at 2. Shortly after, other officers were able to restrain Mr. Disser's hands and feet. Dkt. 39-3 at 2.

Sgt. Heady helped Sgt. Cybroski off of the ground and helped him pick up the broken pieces of his glasses. Dkt. 39-1 at 3.

Sgt. Cybroski and Officer Plyler were not involved with Mr. Disser after he was secured in mechanical restraints. Dkt. 39-1 at 3; dkt. 39-3 at 2-3. Sgt. Cybroski and Officer Plyler were injured, so they went to the duty office and then to off-site care for medical treatment. Dkt. 39-1 at 3; dkt. 39-3 at 2-3. Sgt. Cybroski and Officer Plyler left the chow hall together at 12:27 pm. Ex. A at 12:27:50. Mr. Disser was led out of the chow hall by other custody staff at 12:28 pm. Ex. A at 12:28:10 – 12:28:30.

Sgt. Shaw also was not involved with Mr. Disser after he was secured in mechanical restraints, as she returned to her post in the dining hall while other staff members took Mr. Disser out of the dining hall. Dkt. 39-2 at 2-3.

Sgt. Cybroski had to go to the hospital for X-rays. Dkt. 39-1 at 3. Officer Plyler suffered a concussion with headache, neck, and musculoskeletal pain due to the incident. Dkt. 39-3 at 3.

### III.
### Discussion

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force— even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good- faith and malicious force, courts consider several factors, including:

(1) the need for the application of force; (2) the relationship between the need

and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

This case concerns Mr. Disser's allegations that Defendants used excessive force against him on April 17, 2023. The summary judgment record contains video of the incident. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

There is no designated evidence from which a reasonable jury could find that the Defendants struck or beat Mr. Disser after he was in mechanical restraints. The video evidence confirms that while it took several minutes and multiple staff members to restrain Mr. Disser as he resisted and fought correctional staff, no Defendant or other correctional staff member beat him after he was in mechanical restraints. *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (district court may rely on video evidence when assessing excessive force claim) (citing *Scott*, 550 U.S. at 379−80). The video confirms that Sgt. Cybroski and Officer Plyler had to leave after Mr. Disser was restrained to go get medical attention for their serious injuries. Sgt. Shaw went back to her post inside the chow hall, and other correctional staff escorted Mr. Disser to his next

destination[2]. No reasonable jury could conclude that any Defendant exerted excessive force upon Mr. Disser after mechanical restraints were applied.

Accordingly, Defendants are entitled to summary judgment in their favor.

### Conclusion

Defendants' motion for summary judgment, dkt. [37], is **granted**.

Final judgment consistent with this Order and the Court's screening order, dkt. [12], will issue in a separate entry.

**IT IS SO ORDERED.**

Date:     6/11/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SHAWN R. DISSER
222195
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

---

[2] Even if it is possible that Mr. Disser was assaulted after being led out of the chow hall, the undisputed evidence is that none of the named defendants had any interaction with him at that time.

8